All right, the final case for today is Diggs v. Vannoy. We'll first hear from Mr. Diggs' counsel. Yes, your honor, may it please the court. John Gennard arguing on behalf of petitioner Jamal Diggs. In this case there's really just a single issue before the court and that is whether Mr. Diggs should be entitled to equitable tolling for his first federal habeas petition consistent with this court's precedent in similar cases. I believe that the general facts and the timelines in this case are undisputed and that is that Mr. Diggs' conviction was in state court was finalized on March 14, 2014, meaning that he completed the direct appeal process at that point. And then he filed for state post-conviction relief on February 11, 2015, which would be a period of 334 days, elapsed out of the 365 days allowed under AEDPA. The next period would have tolled that clock until his state court petition for post-conviction relief was denied on September 29, 2017. The record shows that for a period of that summer of 2017, the Louisiana Supreme Court clerk's office failed to send any mailings or notices to the Louisiana State Penitentiary where Mr. Diggs is incarcerated. According to the record, Mr. Diggs, once mailings were resumed, received notice that his final state petition was denied on November 9, 2017, and then submitted his first So if you take the 334, you add the 29 to it, you end up with 363 days excluding the period that we would assert Mr. Diggs is entitled to equitable tolling. And the primary argument that we make on behalf of Mr. Diggs is, starting with the Supreme Court's admonition in Hollins, that courts of equity can and do draw upon decisions made in other similar cases for guidance when making these equitable tolling determinations. Based on that, we did a survey of the most recent cases in the Fifth Circuit. Which one do you think is best for your client? Which is closest to these facts that allowed tolling? Well, I would say two, Your Honor. In terms of the numbers, Umanah v. Davis is probably the most recent case in the Fifth Circuit, and actually was the subject of an en banc poll recently, which the case did not go en banc, but I believe Judge Smith wrote a dissent on that. But Judge Smith was also, earlier in the year, on a case called Jackson v. Davis. And the language that he used in that case, I think, is very important, where he kind of talked about this idea of matching. You know, when you're considering how to weigh these cases in making an equitable tolling determination, at least in Jackson v. Davis, they talked about how the petitioner in that case matched other petitioners in prior cases, both in the timelines, before submitting the first petition, and then in the timeline of acting, after receiving notice of the final denial. So based on that matching language, we really saw two cases that had similar periods to Mr. Diggs, both before and after. And that was, of course, Umanah v. Davis, where you had a petitioner at the 335-day mark submitting a shorter petition. And then in the case of Phillips v. Donnelly, which is a Fifth Circuit case from 2000, that case kind of addressed the timeline for taking action after receiving notice of a denial of estate petition. In that case, the petitioner, in the court opinion, stated that he acted in 30 days after receiving notice. Our calculations here show Mr. Diggs acting in 29 days. So when we compare 334 on the front end to Umanah's 335, when we compare Mr. Diggs's 29 days on the back end to Phillips's 30-day period, we find that we believe that Mr. Diggs has matched prior successful petitioners. One thing in Umanah that's not present here, unless I'm wrong, is that Umanah kept inquiring with the state court. He was showing diligence by saying, what's going on? Why haven't I received a ruling? Which I think is a factor we've considered. Is there anything like that in this case? There's nothing like that, Your Honor, but I do believe there's an important point of distinction to make there. And when we reviewed a lot of these cases out of Texas, it seemed that there was almost a systemic problem in the state of Texas uniquely with ultra-delayed notifications where years would go by. And all the petitioners in Texas, I think in a sense, were on notice that this was a systemic problem. And so you saw in those cases a pattern in practice emerging where petitioners understood that it was incumbent to inquire with this Texas board because notifications just weren't coming. And that Louisiana, with any sort of pattern of late notices coming out, in fact, the clerk's office suggests that this was a one-time, isolated, extraordinary kind of issue where they didn't mail anything, but there had been no previous history of that happening. There's no post-history of that happening. So in this unique window, I can't say that the petitioners in Louisiana would have kind of had that notice or that historical problem that the petitioners in Texas were aware of, where they would have inquired. All right. Anything else, counsel? Let me just check my notes. No, Your Honor. I believe that covers it. Otherwise, of course, we stand on all arguments in our briefs, which I think highlight the same arguments in depth and, of course, provide fuller case law and citations. All right. And you've reserved time for rebuttal. We'll now hear from Mr. Benoit. Mr. Ayo, am I saying that right? Yes, sir. You did. I don't dispute the facts that he laid out, counsel, regarding everything, Your Honor. I just think he fails for two reasons. I think the district court, in the ending of my argument, correctly addressed that in certain rare instances, a petitioner may seek to avoid the effects of untimeliness by establishing the fact that he's possibly innocent of a charge. But then the burden shifts to him. And in this particular case, Mr. Diggs hasn't done anything to establish that. He's raised the same arguments that he's raised. In this particular case, when we tried it, we had three eyewitnesses who identified him as the shooter who shot a man in broad daylight right in front of the window of a barbershop. The barber himself was looking right out that window. He was the only individual in Vermillion Parish that drove a purple car. That purple car was at the scene. That was the car he got out of right before the shooting. And he also fled from the state. The marshals recovered him in Virginia. So I don't think he did anything along that line. Second, I think he slept on his rights. As the court pointed out, he was not diligent in acting within that one-year period. He waited till the end so that there was an error, as there was in this case. It didn't take time to recover from that error. If he had done and filed within the first few months, that delay by the court would not have delayed his filing whatsoever. So I believe he slept on his rights. I agree with what the court ruled. And I think even if he does get the equitable tolling, we're going to end up with the end result that there's nothing new to overturn the conviction. We have three eyewitnesses. Well, on the tolling question, I mean, there's all these cases out there. They're all highly fact-bound. But opposing counsel mentioned this Phillips case. I don't know if you've read it, but there the petitioner waited 286 days on the front end before even filing with the state. He files with the state. It takes a while. Then he takes 30 days after getting the state ruling to file federal, which is a few days more than in this case, the back-end wait. And there we said he was entitled to tolling. Do you have any distinction for that opinion? No, Your Honor, I don't. When the issue first came to me, I said I had no objection to equitable tolling. Because I think the end result is going to be the fact that what he puts before the court will not change the decision that the jury reached back in when we tried this case. I think it was 2008. Did you try it? Were you the trial counsel? Yes, sir, I was. Yes, Paul Parrish, you are the trial counsel. You are the appellate counsel. You are the writ counsel. You get the That's the way it should be. A generalist lawyer. I like that. That's the way it should be. So no, and I don't know how to say this. I don't want to offend anybody, but it's one of the rare cases that happened in that section where we had witnesses who actually were willing to testify. A lot of times we have individuals who see it for fear for their life. They're afraid to testify cases. We have 16-year-olds shooting 16-year-olds right now. And although there are plenty of people out there seeing what happened, we have no witnesses for fear of retaliation by them. So this was one of those rare cases. Counsel for Mr. Diggs, Ed Marquette, did a wonderful job trying to create reasonable doubt that it could have been Mr. Diggs' brother that did the shooting, I even picked on Mr. Marquette when we went to the appellate court because he is a diehard LSU fan. He knows all the statistics. And I mentioned to the appellate court that he didn't even bring up the fact that Mr. Diggs was in a purple car, one of Mr. Marquette's favorite Cubs. He did a wonderful job and prepared well, called the witnesses. And I think Mr. Diggs had a very fair trial and I think the evidence was just stacked against him. When you kill somebody in broad daylight and three people see you and they're willing to come forward, I don't think that can be overcome, Your Honor. I think this court could spend more time on cases that are close calls, that have issues that should be applied. I'm okay. I got some more work ahead of me again in the future, it looks like. But I think the end result is going to be that the conviction is upheld. All right. Well, thank you, counsel. And now we'll hear rebuttal. Mr. Guinard? Yes, Your Honor. I have nothing further to add and will just stand on my original remarks. All right. Well, I know you took this case through the court's pro bono program. So, thank you for volunteering and for your able representation of Mr. Diggs. And this case will be submitted. Counsel are excused and we're done for the day. Thank you. Thank you, Your Honor.